McClone, Respondent, vs. Mulvaney and wife, Appellants.

*May 8—June 3, 1952.*

For the appellants there was a brief by *Curley & Sheedy* of Milwaukee, and oral argument by *Patrick J. Sheedy.*

For the respondent there was a brief by *Benton, Bosser, Becker, Parnell & Fulton* of Appleton, and oral argument by *David L. Fulton.*

BROADFOOT, J.   In 1950 the defendants retained a general contractor to construct a dwelling house on their lot on a cost-plus basis. In September of that year the contractor asked the plaintiff for quotations on windows and doors, with frames therefor, and screens for the house. On September 20, 1950, the plaintiff wrote the contractor as follows:

"Listed below is confirmation of quotations on the Mul vaney job:
"2—Triples 16x30-2 lt, ctr 72x66—thermo-glazed
"1—Single 72x66—twindow glazed

"1—Twin door frame & Fr. doors, 2'6x6'8—1 3/8
"2—40x20—2 lt R.O.W.
"1—Triple 16x20 sides, ctr. approx. 3 ft. square
"2—24x18—2 lt R.O.W.
"2—36x24—   "   "
"1—3'0x6'8—1 3/4 door frame with side lts and storms
    to match side lites.
"1—20x36 outswinging casement (single)
"1—20x36   "   "   (mullion)
"2—32x20—2 lt R.O.W.
"2—24x24—   "   "
"1—2'8x6'8—1 3/4 door frame
"4—36x18—2 lt R.O.W.
"The above includes frames set up, weatherstripped and storms and screens for $1,500.

"We will also agree to furnish the above sizes open for thermopane or twindow (customer's choice) with tension screens for $1,050. This quotation for $1,050 excludes twindows or thermopanes for large units also.

"We thank you for the opportunity to quote you on this job and should the customer decide to use these units, we would appreciate getting the order placed as quickly as possible to assure customer of prompt delivery."

The alternative bid contained in the next to the last paragraph of the letter was accepted. The contractor also asked the plaintiff for a bid on thermopane to be installed in all of the windows. This bid was obtained through the Hoffer Glass Company of Appleton and amounted to the sum of $968.25. In November the contractor was discharged. Mr. Mulvaney contacted the plaintiff and stated that he would accept what the contractor had done, and the plaintiff sent Mulvaney a copy of the letter written to the contractor on September 20th. In the copy, the third line of materials to be furnished read as follows:

"1—Twindo or frame & Fr. doors, 2'6x6'8—1 3/8"

Because the defendants were in a hurry to proceed with the construction the window frames were forwarded and installed in the house before the window sash were forwarded.

The sash were later installed but warped and were returned to the factory for correction of the defects. The windows were not finally installed until August, 1951.

After the contractor was discharged an architect was hired to supervise the construction and he canceled the order for the French doors because he wished to install thicker doors. The credit of $28 was for the two doors returned to the plaintiff.

On February 16, 1951, the plaintiff sent the defendants a bill for $2,018.25, being $1,050 for the frames, windows, and doors plus the $968.25 for the thermopane installed in the windows. Upon the bill was this notation:

"Please deduct about $200 from the above total until the tension screens are furnished."

On March 30th, Mr. Mulvaney wrote the plaintiff as follows:

"Your bill as outlined, $2,018.25, less five per cent discount, $100.91,—difference, $1,917.34, less recommendation that we hold $200 for screens, $1,717.34. We were to give you seventy per cent of this amount of money. Seventy per cent of $1,717.34 is $1,202.14. We are therefore inclosing our check for $1,202.14, a partial payment on your account."

No further payment was made and thereupon plaintiff filed his claim for lien and later started this action for the foreclosure thereof.

Upon the trial of the action there was a dispute as to the terms of the agreement. The letter of September 20th from the plaintiff to the contractor contained expressions used in the trade and abbreviations of those expressions, and it is ambiguous to one not familiar with the construction business. Accordingly the trial court permitted extrinsic evidence to explain the same. The plaintiff testified that the first part of the letter contained a bid to furnish the materials there listed glazed with ordinary glass, except where thermopane or

twindow (trade names meaning the same thing) were indicated. His bid therefor was $1,500. His alternate bid was to furnish the items without glass for $1,050 and that was the bid accepted.

Because of the mistake in copying the item referring to the French doors, the defendants contended that thermopane or twindow was to be furnished for the French doors. The trial court construed the agreement to mean that the bid accepted was for windows and doors without thermopane.

The defendants also contended that they were entitled to a credit of $200 because the tension screens were not furnished, and they referred to the notation on the bottom of the statement sent them by the plaintiff. The plaintiff explained that he meant $200 could be withheld until the screens were furnished and until the windows were adjusted and made to fit. The defendants had canceled the order for the screens on May 1, 1951, on the ground that the sample sent out did not work and that it was galvanized screen. They thereupon ordered copper screen in frames at a cost of nearly $200. Plaintiff allowed the sum of $79.90, which he testified was the retail price of the tension screens, which were made of aluminum. The trial court construed the correspondence as explained by the plaintiff.

Mr. Mulvaney contended that at one time he had talked with the plaintiff and asked him if any allowance was made to contractors and that plaintiff informed him that contractors were given a discount of five per cent. The plaintiff denied this and stated that the price quoted was net. The trial court allowed a five per cent discount on the amount of the bid by the plaintiff of $1,050, but not on that portion of the bill for thermopane which plaintiff purchased through the Hoffer Glass Company. The defendants contend this was error.

The defendants also claim further damages for repairs and extra work done by them because the windows did not fit.

This work was done without notice to the plaintiff and without giving him an opportunity to correct any defects although he had, whenever notified, made such correction. These items were disallowed by the trial court. The trial court gave each matter careful consideration, and the record justifies its determinations. We can find no error in its findings of fact or conclusions of law.

*By the Court.*—Judgment affirmed.